# EMERSON ELECTRIC *v.* Vera A. GASTON

CA 01-136 58 S.W.3d 848

Court of Appeals of Arkansas
Division II
Opinion delivered October 10, 2001

*Roberts, Roberts, & Russell, P.A.,* by: *Bud Roberts, Bruce Anible,* and *Ben Cormack,* for appellant.

*Lawrence W. Fitting, P.A.,* by: *Lawrence W. Fitting,* for appellee.

KAREN R. BAKER, Judge. Appellant, Emerson Electric, brings this appeal challenging a decision of the Workers' Compensation Commission awarding temporary total disability benefits for the period between January 27, 1998, and April 13, 1998. On appeal, appellant argues the following: the evidence was insufficient to support a twenty-six percent impairment rating; the evidence was insufficient to support a fifty-percent wage loss; and the evidence was insufficient to support temporary total disability benefits for the period between January 27, 1998, and April 13,

1998. Appellee cross-appeals on the issue of permanent total disability benefits. We affirm on direct appeal and on cross-appeal.

Appellee, Vera Gaston, has been employed by appellant for thirty-one years. Around 1992, appellee was transferred to the winding department. The winding department was an area of appellant's plant in which varnish was coated onto the motor product. Appellee became exposed to varnish vats, varnish ovens, sanders, and grinders, and she began experiencing respiratory difficulties for which she sought medical treatment.

Appellee first saw her family physician, who referred her to Dr. Robert Sanders, a pulmonary specialist. Dr. Sanders diagnosed appellee with occupational asthma, took her off work, and assessed her with a permanent-impairment rating of one hundred percent to the body as a whole. On August 21, 1998, appellee saw Dr. Joseph Bates. After performing a series of tests, Dr. Bates concluded that appellee had no objective abnormalities, normal pulmonary function, and assessed a permanent impairment rating of zero percent. On October 27, 1998, Dr. Sanders performed another series of tests, which resulted in the same diagnosis, a permanent-impairment rating of one hundred percent as to the body as a whole. On January 14, 1999, another physician, Dr. Paula Anderson, performed a series of tests on appellee and concluded that appellee had not sustained any permanent physical impairment to her pulmonary function.

The Administrative Law Judge (ALJ) found that appellee's asthma was a compensable occupational disease and awarded additional wage-loss benefits in the amount of fifty percent. The Commission remanded the claim to the ALJ for more adequate findings on the issues of objective medical findings and permanent physical impairment. In a supplemental opinion, the ALJ found that the pulmonary tests performed by the treating physician were objective and that appellee sustained a twenty-six percent permanent physical impairment to the body as a whole in addition to other benefits in the previous opinion. The Commission affirmed the findings of the ALJ in the original and supplemental opinion. From that decision comes this appeal.

We affirm the Commission if its decision is supported by substantial evidence; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Air Compressor Equip. v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000). We view the evidence in the light most favorable to the

findings of the Commission and give the testimony its strongest probative force in favor of the action of the Commission. *Buford v. Standard Gravel Co.*, 68 Ark. App. 162, 5 S.W.3d 478 (1999). If reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Southern Steel & Wire v. Kahler*, 54 Ark. App. 376, 927 S.W.2d 822 (1996).

First, appellant challenges the sufficiency of the evidence in regard to the twenty-six percent impairment rating awarded by the Commission. Appellant asserts that there are two reasons that the validity of the rating is not supported by substantial evidence. First, the rating was not based on objective medical findings. Instead, it was based on medical tests which could have come under the voluntary control of the appellee. Second, in assigning the twenty-six percent impairment rating, the ALJ failed to consider all relevant information as required by the AMA Guides in that the ALJ failed to consider appellee's physical condition and ignored two impairment ratings assigned by physicians who did consider this information.

Arkansas Code Annotated section 11-9-704(c)(1)(B) (Repl. 1996) states that "any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings." Moreover, Arkansas Code Annotated section 11-9-102(16)(A)(i) (Repl. 1996) provides that " 'objective findings' are those findings which cannot come under the voluntary control of the patient." During appellee's treatment, both Dr. Sanders and Dr. Bates performed pulmonary-function testing. Both stated in their depositions that the test results depend on the patient giving maximum effort. Clearly, a patient's breathing is at least partially within his or her control and potentially subject to manipulation. However, both doctors opined that appellee was giving maximum effort throughout her testing. Moreover, Dr. Sanders testified as to several factors which help determine whether the patient was performing maximal exercise. Two of those factors included studying the steady rise in oxygen-consumption data to see when the data reaches a plateau and studying the respiratory exchange ratio on the exercise test and the bicarbonate drop in the blood gas obtained at peak exercise to determine when the patient has become anaerobic. Thus, the pulmonary-function testing is clearly an objective test due to the objective data the test produces, in spite of the fact that a patient is at least partially able to control his or her breathing. We find that the Commission was correct in concluding that the oxygen-consumption data and the bicarbonate-

drop data were both objective chemical data, which provide qualitative and quantitative analysis to determine whether the patient has in fact expended maximum effort during exercise, and that the chemical analysis itself is not under the voluntary control of the patient.

▮▮ Appellant also challenges the twenty-six percent impairment rating because the ALJ failed to consider appellee's physical condition and ignored two impairment ratings assigned by physicians who did consider this information. Contrary to appellant's assertion, the specific degree of impairment was determined primarily by the physicians' testimony, even though it was conflicting. The Commission has the duty of weighing medical evidence and, if the evidence is conflicting, its resolution is a question of fact for the Commission. *University of Ark. Med. Sciences v. Hart*, 60 Ark. App. 13, 958 S.W.2d 546 (1997) (citing *Whaley v. Hardee's*, 51 Ark. App. 166, 912 S.W.2d 14 (1995)). The Commission is not required to believe the testimony of any witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.* Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Ford v. Chemipulp Process, Inc.*, 63 Ark. App. 260, 977 S.W.2d 5 (1998) (citing *Linthicum v. Mar-Bax Shirt Co.*, 23 Ark. App. 26, 741 S.W.2d 275 (1987)).

▮ Second, appellant challenges the sufficiency of the evidence as to the fifty-percent wage loss awarded by the Commission. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Eckhardt v. Wills Shaw Express, Inc.*, 62 Ark. App. 224, 970 S.W.2d 316 (1998). The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Id.* (citing Ark. Code Ann. § 11-9-522(c)(1) (Supp. 1997)). In considering factors that may affect an employee's future earning capacity, the court considers the claimant's motivation to return to work, since a lack of interest or a negative attitude impedes our assessment of the claimant's loss of earning capacity. *Ellison v. Therma Tru*, 71 Ark. App. 410, 30 S.W.3d 769 (2000). Dr. Sanders' diagnosis required that appellee refrain from working in any environment which would cause her to be exposed to excessive dust or chemicals. Since appellee has been in this line of work for thirty-one years, her employment opportunities may have been limited. In addition, appellee was fifty-seven years of age, and her level of education consisted of a GED; both of these factors would

also inevitably limit her employment opportunities. We hold that substantial evidence supported the Commission's award of fifty-percent wage loss.

 Third, appellant challenges the sufficiency of the evidence as to the temporary total disability benefits for the period between January 27, 1998, and April 13, 1998. Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages. *Carroll Gen. Hosp. v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996) (citing *J.A. Riggs Tractor Co. v. Etzkorn*, 30 Ark. App. 200, 785 S.W.2d 51 (1990)). Arkansas Code Annotated section 11-9-102(13) (Supp. 1995) defines "healing period" as that period for healing of an injury resulting from an accident. The healing period continues until the employee is as far restored as the permanent character of his injury will permit, and if the underlying condition causing the disability has become stable and if nothing in the way of treatment will improve that condition, the healing period has ended. *Harvest Foods v. Washam*, 52 Ark. App. 72, 914 S.W.2d 776 (1996). The determination of when the healing period has ended is a factual determination for the Commission, which is affirmed on appeal if supported by substantial evidence. *Carroll Gen. Hosp.*, 54 Ark. App. at 107, 923 S.W.2d at 881. In Dr. Sanders's opinion, during the period from January 27, 1998, to April 13, 1998, appellee's condition was so severe as to render her incapable of performing any of her regular employment duties; Dr. Sanders took appellee off work completely in January 1998. Appellee continued to receive medical care from January 1998 to April 1998, and on April 14, 1998, Dr. Sanders concluded that appellee had reached her maximum medical improvement. In view of Dr. Sanders's testimony, we hold that substantial evidence supported the award of temporary total disability benefits from January 27, 1998, to April 13, 1998.

 On cross-appeal, appellee asserts that she has proven by a preponderance of the evidence that she is permanently totally disabled based on Dr. Sanders's one hundred percent impairment rating; however, the Commission has the authority to accept or reject medical opinions. *See Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000). She further argues that she is entitled to permanent total disability because her work opportunities are restricted due to the fact that she is fifty-seven years old, has a GED, has worked for appellant for thirty-one years, and that she must abstain from working around dust and chemicals. However, the Commission stated that appellee's work opportunities were not completely restricted. The Commission also considered her lack of

motivation in finding employment. *See Ellison, supra.* We acknowledge that her argument resembles the odd-lot doctrine; however, that doctrine has been abolished by Act 796 of 1993, codified at Arkansas Code Annotated section 11-9-522(e) (Supp. 1999). *See Goodwin v. Phillips Petroleum Co.*, 72 Ark. App. 302, 37 S.W.3d 644 (2001). Despite appellee's physical restrictions, we hold that substantial evidence supported the Commission's finding that appellee was not permanently totally disabled.

Pursuant to the Commission's authority, it heard and weighed the conflicting evidence presented in this case and gave the evidence the weight it deemed appropriate. We hold that the Commission's decision was supported by substantial evidence and affirm on direct appeal and on cross-appeal.

JENNINGS and CRABTREE, JJ., agree.