DeQUEEN SAND & GRAVEL CO.
and St. Paul Mercury Insurance Company *v.*
Clyde COX

CA 05-1239                                              236 S.W.3d 5

Court of Appeals of Arkansas
Opinion delivered May 17, 2006

*Kilpatrick, Williams, & Meeks, L.L.P.*, by: *Richard A. Smith*, for appellants.

*Harrelson, Moore & Giles, L.L.P.*, by: *Greg Giles*, for appellee.

Larry D. Vaught, Judge. Appellant DeQueen Sand & Gravel (DSG) appeals the decision of the Workers' Com-

pensation Commission that found Cox was permanently and totally disabled due to a compensable injury. On appeal, DSG argues that the Commission's decision was not supported by substantial evidence. We disagree and affirm.

Cox worked as a rock crusher for DSG for twenty years, a position that frequently exposed him to large quantities of silica dust. As a result, Cox was diagnosed with silicosis on October 19, 2000, by Dr. Charles Hiller.[1] Pulmonary function tests performed by Dr. Hiller showed Cox's forced vital capacity maneuver (FVC) to be 89% of predicted levels[2] and his forced expiratory of volume in one second (FEV-1)[3] to be 69%. Cox was referred to Dr. Robert Johnson for treatment of the silicosis, and he added a diagnosis of chronic bronchitis. Cox was told by both doctors that he needed to stay away from silica dust. After requesting a transfer, Cox was relocated to the service station at DSG, where dust levels were lower.

Dr. Johnson testified that he performed breathing tests on Cox in July 2001 that showed that Cox's FEV-1 had decreased to 58%. Cox was tested again on May 30, 2002, and showed no improvement, although Dr. Johnson's nurse reported that Cox gave poor effort on the test. Dr. Johnson noted, however, that Cox's lung functions were deteriorating and therefore, recommended that Cox leave his present place of employment. He was again tested in June 2003, and his FEV-1 was at 52% — worse than his previous two tests. Records indicate that Cox showed good effort on this test.

Although Dr. Johnson initially assessed Cox an impairment rating of 20–30% in August 2002, Dr. Johnson testified that a more appropriate rating was 50% based on Cox's most recent results on the FEV-1 and the American Medical Association's guidelines. Dr. Johnson stated that according to the guidelines, when the FEV-1 is in the 41–59% range, the impairment rating increases to between 26% to 50%, which is in the "moderate" range. Although Dr. Johnson did testify that Cox's symptoms were better and his FVC test results were improving, Dr. Johnson stated that Cox's disabil-

---

[1] DSG stipulated that Cox's silicosis was compensable.

[2] Predicted levels are those generated by normal individuals based on age, height, and sex. Therefore, Cox performed in the eighty-ninth percentile for a person of his age, height, and sex.

[3] The higher a person scores on the FEV-1, the better his or her lung capacity.

ity was greater than it had been. Based on his complete examination of Cox, Dr. Johnson assigned Cox an impairment rating of 50%.

Bob White, a vocational specialist, interviewed Cox and evaluated his vocational abilities. White testified that Cox was forty-five years old, had an eighth-grade education, and had "good" and "bad" days with regard to his medical condition. White stated that Cox could do "sedentary" to "light" work, but was required to avoid dust. White testified that Cox's medical condition, combined with his lack of education and age, would likely create a problem for Cox with regard to employment. White stated that Cox would have a better chance to find employment if he was able to secure a high-school equivalency diploma, something that Cox was pursuing. White also testified that Cox had applied for several jobs but had not been extended an offer of employment. White attributed this to the fact that Cox did not have a high-school diploma. White admitted that Cox was a hard worker with a stable job history, but White explained that in the current job market, a person without a high-school diploma or its equivalent had a much more difficult time finding employment.

In reviewing decisions of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm the decision if it is supported by substantial evidence. *Clairday v. Lilly Co.*, 95 Ark. App. 94, 234 S.W.3d 347 (2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id.* It is the Commission's function to determine witness credibility and the weight to be afforded to any testimony; the Commission must weigh the medical evidence and, if such evidence is conflicting, its resolution is a question of fact for the Commission. *Searcy Indus. Laundry, Inc. v. Ferren*, 82 Ark. App. 69, 110 S.W.3d 306 (2003).

Pursuant to Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 2002), any determination of the existence of a physical impairment must be supported by objective and measurable medical findings. Arkansas Code Annotated section 11-9-102(16)(A)(i) (Supp. 2005) further clarifies that "objective findings" are those findings that cannot come under the voluntary control of the patient. In

*Emerson Elec. v. Gaston*, 75 Ark. App. 232, 236, 58 S.W.3d 848, 851 (2001), the appellant challenged the findings of the Commission because the pulmonary testing was at least, in part, controlled by the effort given by the claimant. Appellant contended that because the claimant had control over part of the test, the results of those tests were not "objective medical findings." We held that "pulmonary-function testing is clearly an objective test due to the objective data the test produces, in spite of the fact that a patient is at least partially able to control his or her breathing."

■ DSG first argues that the Commission erred in awarding Cox a 50% impairment rating because there was no evidence to justify that rating. However, Dr. Johnson gave detailed testimony as to why he would assign Cox a 50% impairment rating. Based on his medical opinion of Cox's overall health, the results of the breathing tests he performed on Cox, and the AMA guidelines, he assessed that Cox was entitled to a 50% impairment rating. Although there was some evidence to suggest that Cox did not put forth his best effort on every breathing test, the Commission is charged with determining issues of credibility and weighing medical evidence. Additionally, as we stated in *Gaston*, even though pulmonary-function tests can be somewhat controlled by a patient's effort, those tests are still objective medical findings. Based on the testimony of Dr. Johnson and the medical results of Cox's breathing tests, reasonable-minded persons could agree with the finding of the Commission; therefore, we affirm on this point.

DSG's second argument is that the Commission erred in assigning Cox wage-loss benefits of 50%. The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Id.* at 237-38, 58 S.W.3d at 851-52. In considering factors that may affect an employee's future earning capacity, the court considers the claimant's motivation to return to work, since a lack of interest or a negative attitude impedes our assessment of the claimant's loss of earning capacity. *Id.*, 58 S.W.3d at 851-52.

■ Here, Dr. Johnson's diagnosis required that Cox refrain from working in any environment that would cause him to be exposed to excessive dust. White testified that because Cox had been in his line of work for over twenty years and did not have a high-school diploma or its equivalent, his employment opportunities were limited. Although White was unable to determine how

motivated Cox was to return to work, the Commission felt that the fact that Cox filled out multiple job applications, that he testified that he wanted to work, and that he had been a hard worker for many years as a rock crusher established that Cox was motivated to work. Based on this evidence, we are satisfied that substantial evidence supports the Commission's award of 50% wage loss.

Affirmed.

HART and ROAF, JJ., agree.