2009 Ark. App. 148

**ENTERPRISE PRODUCTS COMPANY and ESIS, Appellants,**

v.

**Billy J. LEACH, Appellee.**

**No. CA 08–888.**

Court of Appeals of Arkansas.

March 4, 2009.

**254**

Worley, Wood & Parrish, P.A., by: Jarrod S. Parrish, Little Rock, for appellants.

Joe M. Rogers, West Memphis, for appellee.

JOHN B. ROBBINS, Judge.

Appellee Billy J. Leach sustained an injury to his cervical spine on June 17, 2003, while working as a truck driver for appellant Enterprise Products Company. In a previous proceeding, the Workers' Compensation Commission found the injury to be compensable and awarded temporary total disability benefits, as well as medical treatment to include an anterior microdiskectomy of C6–7 with fusion performed on January 13, 2005. A controversy subsequently arose concerning Mr. Leach's entitlement to permanent benefits, and after a hearing the Administrative Law Judge awarded benefits for 15 percent permanent wage-loss disability and a 10 percent permanent anatomical impairment. The Commission modified the ALJ's award and found that Mr. Leach was entitled to 10 percent wage-loss and an 8 percent permanent impairment.

On direct appeal from the Commission's most recent order, Enterprise Products Company argues that there is no substantial evidence to support the Commission's award of wage-loss disability. Mr. Leach has cross-appealed, arguing that the Commission erred in reducing the ALJ's permanent impairment rating from 10 percent to 8 percent, and further erred in reducing the ALJ's wage-loss award from 15 percent to 10 percent. We affirm on both direct appeal and on cross-appeal.

In determining the sufficiency of the evidence to support the Commission's findings, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial evidence. *Farmers Coop. v. Biles*, 77 Ark.App. 1, 69 S.W.3d 899 (2002). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The determination of the credibility and weight of the evidence is within the province of the Commission. *Id.*

Mr. Leach testified that he is sixty years old and did not finish high school but obtained a GED. He served in the military as an aircraft maintenance technician from 1965 through his retirement from the military in 1985. Mr. Leach went into the truck driving profession in 1989 and began driving for Enterprise Products Company in December 2001. He drove tankers for the appellant, and sustained his compensable injury when he lifted a hose over his head, resulting in severe neck and back pain.

Following his fusion surgery on January 13, 2005, Mr. Leach was released to return to work for Enterprise Products Company on April 1, 2005. He returned to work at his regular duties on April 3, 2005, and continued working for appellant through the end of August 2005. According to Mr. Leach, his job was very strenuous and he was required to pull as much as a hundred feet of two-inch hose that weighed well over 100 pounds. Moreover, he testified that driving the tanker truck involved a lot of bouncing and that, "You've got 45,000 pounds of liquid that's sitting there just slamming you back and forth." Mr. Leach indicated that his job

activities aggravated his surgery and that his pain progressively worsened until he could not deal with the pain anymore, causing him to quit his employment. He stated that extreme neck pain and limited use of his right arm affected his ability to drive a truck, and he maintained that he can no longer engage in that line of work. Mr. Leach has not been employed since the time that he quit working for appellant.

On direct appeal, Enterprise Products Company argues that the Commission erred in finding that Mr. Leach was entitled to any permanent wage-loss disability because Mr. Leach failed to prove that his compensable injury resulted in a diminution of his earning capacity. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Emerson Elec. v. Gaston,* 75 Ark.App. 232, 58 S.W.3d 848 (2001). Arkansas Code Annotated section 11–9–522(b) (Repl.2002) provides:

(b)(1) In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Workers' Compensation Commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his or her future earning capacity.

(2) However, so long as an employee, subsequent to his or her injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his or her average weekly wage at the time of the accident, he or she shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by a preponderance of the medical testimony and evidence.

In this case, the appellant contends that there was no evidence that Mr. Leach suffered any wage-loss disability in addition to his permanent impairment, and specifically asserts that he is barred from such benefits under subsection (b)(2) because he returned to his work as a truck driver from April through August of 2005 performing the same job at the same wages.

In its argument, Enterprise Products Company directs us to Mr. Leach's testimony on cross-examination, when he acknowledged that he had married a woman and moved to the Dominican Republic to be with her after quitting his employment at the end of August 2005. Mr. Leach lived in either the Dominican Republic or Honduras from September 2005 through March 2007, and acknowledged taking several long flights back and forth to the United States during that time. The appellant submits that Mr. Leach was physically capable of continuing his employment, but instead chose to quit so he could move out of the country to be with his wife. The appellant notes that Mr. Leach was returned to full duty on April 1, 2005, and that there were no restrictions placed on him by any physician since that time. In fact, he sought no medical treatment from the time he left Enterprise Products Company until visiting the VA hospital in May 2007, and even then no restrictions were placed on his job activities. Moreover, before resuming his work in April 2005, Mr. Leach passed a physical examination given by the department of transportation clearing him to return to work. Finally, appellant directs us to Mr. Leach's testimony that his impending doctor visits for suspected prostate cancer are an impediment to his applying for work due to scheduling conflicts. Enterprise Products

Company argues that the Commission's decision awarding wage-loss disability is not one that a fair-minded person would have reached given the same set of facts.

We hold that the 10 percent permanent wage-loss disability awarded by the Commission was supported by substantial evidence. While Mr. Leach did return to working as a truck driver for a period of months following his surgery, this did not forever foreclose him from wage-loss disability benefits because subsection 11–9–522(b)(2) denies entitlement to such benefits only *so long as* an employee has returned to work at equal wages. Here, Mr. Leach testified that his return to work aggravated his condition, causing extreme neck pain and loss of use of his right arm, to the extent that he could no longer continue his employment duties. He testified that he repeatedly complained to his supervisor, but he was not offered lighter work. This testimony was deemed credible by the Commission, and it established some measure of wage-loss disability as Mr. Leach could no longer be employed at this strenuous level as a truck driver.

The evidence demonstrated that Mr. Leach sustained a compensable neck injury, diagnosed as cervical spondylosis and radiculopathy at the C6–7 level, which necessitated the need for fusion surgery. He reached maximum medical improvement and established an 8 percent permanent anatomical impairment. Mr. Leach is sixty years old with limited education and a limited range of prior work experience. While Mr. Leach did move out of the country for almost two years, he explained that it was less expensive to live there on his military retirement and that there were no VA hospitals to visit. The absence of any current documented work restrictions does not bar appellee's wage-loss claim as a matter of law, and there is other evidence to support his claim. And

while he has recently undergone testing for suspected prostate cancer, his disability manifested itself long before then and it is evident that the Commission did not take that nonwork-related condition into account as it awarded only 10 percent in permanent wage-loss. On this record, we conclude that the Commission committed no error in so doing.

We now turn to Mr. Leach's cross-appeal, wherein he first argues that the Commission erred in reducing his permanent anatomical impairment rating from 10 percent to 8 percent. Pursuant to Ark.Code Ann. § 11–9–522(g)(1)(A) (Repl.2002), the Commission has been charged with adopting an impairment guide to be used in the assessment of physical impairment. Pursuant to this directive, the Commission adopted the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993). *See Excelsior Hotel v. Squires*, 83 Ark.App. 26, 115 S.W.3d 823 (2003). Mr. Leach contends that the 10 percent impairment rating assigned by the ALJ is both consistent with the *AMA Guides* and the opinion of Dr. F.R. Shrader, who assigned a 10 percent rating utilizing Table 75, Section IV(D), of the *AMA Guides* on May 24, 2007.

We hold that it was not error for the Commission to reduce appellee's impairment rating from 10 percent to 8 percent based on the evidence presented. The two competing alternatives here are found in Table 75, page 3/113 of the *AMA Guides*. Section IV(C) of that table provides for an 8 percent impairment for single-level cervical spinal fusion *without* residual signs or symptoms, and section IV(D) assigns a 10 percent rating for single-level cervical spinal fusion *with* residual signs or symptoms. The controversy relates to Mr. Leach's radiculopathy, and the Commission indicated that it could not

rely on subjective signs or symptoms to increase the impairment rating.

Prior to the fusion surgery, Mr. Leach was diagnosed with radiculopathy. This diagnosis was based on objective studies, and in particular a December 8, 2004, medical report documented that a nerve conduction study showed an acute right C7 radiculopathy. However, following the C6–7 fusion surgery on January 13, 2005, there was an absence of medical evidence demonstrating that radiculopathy was still present. In fact, in the subsequent medical reports authored by his surgeon, Dr. Joseph Hudson, Dr. Hudson made no mention of radiculopathy but reported that Mr. Leach was doing very well and that his fusion was progressing nicely. Dr. Hudson released him to work on April 1, 2005. Although Mr. Leach testified that, after returning to work after the surgery, he was in a considerable amount of pain, Ark. Code Ann. § 11–9–102(16)(A)(ii) (Repl. 2002) provides that complaints of pain cannot be considered when determining physical impairment. And while Mr. Leach is correct that Dr. Shrader indicated in his report that radiculopathy was a residual sign increasing the rating to 10 percent pursuant to the *AMA Guides,* Dr. Shrader never examined Mr. Leach and his opinion was limited to his evaluation of the prior medical records. Because Mr. Leach failed to establish, post-operatively and objectively, the presence of radiculopathy or any other residual sign or symptom independent of his continuing pain, there was substantial evidence to support the 8 percent impairment awarded by the Commission pursuant to section IV(C) of Table 75 of the *AMA Guides.*

Mr. Leach's remaining argument is that the Commission erred in reducing the ALJ's wage-loss award from 15 percent to 10 percent. Mr. Leach asserts that this reduction was based in part on the Commission's erroneous award for only an 8 percent permanent impairment as opposed to the 10 percent permanent impairment awarded by the ALJ. However, for reasons previously stated, we affirm the 8 percent impairment rating awarded by the Commission. Moreover, we think reasonable persons could conclude that appellee's permanent partial disability was limited to 10 percent under these facts. While the Commission credited Mr. Leach's testimony that he was no longer employable as a tanker truck driver, Mr. Leach is not totally disabled and he has not since applied for any work. Lack of interest or motivation to return to work impedes the assessment of a claimant's loss of earning capacity. *See Ellison v. Therma Tru,* 71 Ark.App. 410, 30 S.W.3d 769 (2000). Upon review of the evidence, viewing the facts in the light most favorable to the Commission's decision, we hold that its award of 10 percent permanent wage-loss disability is supported by substantial evidence.

Affirmed on direct appeal; affirmed on cross-appeal.

MARSHALL and BROWN, JJ., agree.