2010 Ark. App. 7

**Steven TUCKER, Appellant**

v.

**COOPER STANDARD AUTOMOTIVE, INC., St. Paul Travelers Insurance Company, and Death & Permanent Total Disability Trust Fund, Appellees.**

**No. CA 09–697.**

Court of Appeals of Arkansas.

Jan. 6, 2010.

Ronald L. Griggs, El Dorado, for appellant.

Bridges, Young, Matthews & Drake, PLC, Pine Bluff, by: Michael J. Dennis, for appellees.

JOHN B. ROBBINS, Judge.

Appellant Steven Tucker sustained an admittedly compensable back injury while working for appellee Cooper Standard Automotive on October 27, 2000. Mr. Tucker underwent three surgical procedures and on June 19, 2003, Dr. Wayne Bruffett reported that Mr. Tucker had reached maximum medical improvement and assigned a 15–percent permanent physical-impairment rating. The appellee accepted and paid compensation for the 15–percent impairment rating, but a controversy arose over Mr. Tucker's claim for permanent and total wage-loss disability benefits.

A hearing was held before the Administrative Law Judge (ALJ) for the purpose of establishing the extent, if any, of Mr. Tucker's entitlement to permanent wage-loss disability benefits. After the hearing, the ALJ found that Mr. Tucker refused to participate in job-placement assistance without reasonable cause, and thus that Mr. Tucker was not entitled to any wage-loss disability pursuant to Ark.Code Ann. § 11–9–505(b)(3) (Repl.2002), which provides:

> The employee shall not be required to enter any program of vocational rehabilitation against his or her consent; however, no employee who waives rehabilitation or refuses to participate in or cooperate for reasonable cause with either an offered program of rehabilitation or job placement assistance shall be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by objective physical findings.

Mr. Tucker appealed to the Workers' Compensation Commission, and the Commission reversed the decision of the ALJ. Strictly construing the statute, the Commission found that the ALJ had erred as a matter of law in denying Mr. Tucker's claim for permanent-total-disability benefits based on Ark.Code Ann. § 11–9–505(b)(3), because that provision cannot act as a statutory bar to a claim of permanent-total disability. The Commission then addressed Mr. Tucker's alternative claim for permanent-partial disability, and found that there was no statutory bar to that claim because Cooper Standard Automotive did not prove that Mr. Tucker had acted unreasonably in his lack of cooperation with his job-placement counselor. Considering the relevant wage-loss factors, the Commission found that Mr. Tucker proved that he had sustained 20–percent permanent wage-loss in excess of his 15–percent permanent physical impairment.

Mr. Tucker now appeals the Commission's decision, arguing that the Commission erred in limiting him to only 20–percent wage-loss disability benefits. Mr. Tucker asserts that the evidence established that he was permanently and totally disabled or, in the alternative, that he should have been awarded a higher percentage of wage loss. Cooper Standard Automotive has cross-appealed, arguing that (1) the Commission erred in finding that Ark.Code Ann. § 11–9–505(b)(3) does not apply to a claim for permanent and total disability, and (2) the Commission erroneously shifted the burden of proof as to whether Mr. Tucker's lack of cooperation under the statute was reasonable. Cooper Standard Automotive contends

that because there was no substantial evidence to support appellant's claim that he acted reasonably in failing to take any action to seek or obtain employment, he had failed in his burden of proving entitlement to any wage-loss disability pursuant to the above-cited statute.

On direct appeal, we affirm the Commission's denial of Mr. Tucker's claim for permanent-total disability benefits. However, we reverse and remand for the Commission to award a greater percentage of permanent-partial wage-loss benefits. We affirm on cross-appeal.

Under Ark.Code Ann. § 11–9–519(e)(1) (Repl.2002), permanent-total disability means inability, because of compensable injury, to earn any meaningful wages in the same or other employment. The wage-loss factor is the extent to which a compensable injury has affected the claimant's livelihood. *Logan Cnty. v. McDonald,* 90 Ark.App. 409, 206 S.W.3d 258 (2005). In considering claims for permanent-partial disability benefits in excess of the employee's percentage of permanent-physical impairment, the Commission may take into account, in addition to the percentage of permanent-physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his future earning capacity. Ark.Code Ann. § 11–9–522(b)(1) (Repl.2002).

When reviewing a decision from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm the decision if it is supported by substantial evidence. *Lepel v. St. Vincent Health Servs.,* 96 Ark.App. 330, 241 S.W.3d 784 (2006). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* It is the Commission's

function to weigh the medical evidence and assess the credibility and weight to be afforded any testimony. *Clairday v. Lilly Co.,* 95 Ark.App. 94, 234 S.W.3d 347 (2006).

Mr. Tucker testified that he is thirty-seven years old and has a high school education. He began working for the appellee in 1997, and at the time of his injury he was a press operator earning from $18 to $22 an hour, depending on the press work that was available. On October 27, 2000, Mr. Tucker was trying to "open a mold that got stuck." He described a "mold" as a "steel chamber that holds approximately sixty to eighty steel parts." Upon trying to open the mold with a breaker bar, he sustained a compensable back injury. Mr. Tucker was diagnosed with a herniated disc at the L4–5 level, and did not return to work until ten months after the injury.

Mr. Tucker underwent the first of three surgeries on July 27, 2001. That surgery consisted of a laminectomy at L4–5 and partial discectomy and nerve-root decompression. He returned to work four weeks after that surgery and was assigned sedentary finishing work behind the press operators earning about $12 an hour. Mr. Tucker testified that he continued working in that capacity for two or three months, but that he reinjured his back.

On January 18, 2002, Mr. Tucker underwent a second laminectomy at L4–5 with partial discectomy and nerve-root compression. He was unable to return to work after the second surgery, and he underwent fusion surgery on October 10, 2002.

Mr. Tucker next returned to work in February 2003. He was assigned light duty picking up trash for $12 an hour, but when cold weather gave him trouble performing that job he was assigned to the storeroom, where he handed out supplies

at the same rate of pay. He performed that job for about a year, but stated that his back condition gradually got worse and he was missing work because of his pain. The appellee relocated Mr. Tucker to a job in the lab, which he performed for only four hours before deciding he could not do the job. Mr. Tucker discontinued working in April 2004, but returned for one day in October 2005 "because I was not receiving any income and had to do something." He worked a finishing job for eight hours that day, but testified that he could not get out of bed the following day due to back, hip, and leg pain.

Mr. Tucker maintained in his testimony that he has not worked since October 2005 because of sharp and constant pain related to his compensable back injury. He also testified that he was on daily medication that made him groggy or jittery. Mr. Tucker acknowledged that his vocational counselor, Tanya Owen, provided him with a list of potential jobs, but stated that he did not apply for any of them because he could not stay on his feet and was physically incapable. Mr. Tucker stated that he did not know of any job that he could perform for eight hours a day.

A functional-capacity evaluation (FCE) was performed on June 9, 2003. The results of that evaluation were that Mr. Tucker gave full physical effort and would not be able to return to his job as a press operator. However, Mr. Tucker was rated for sedentary to light work, and the FCE report indicated that he was capable of continuing the light-duty work that he was performing at that time.

Dr. Wayne Bruffett was the physician who performed all of appellant's surgeries, and on June 19, 2003, he reported,

> I have explained the FCE to Mr. Tucker as best I can, and I think he understands this. Hopefully his employer can accommodate him by making his current position a permanent one. If they cannot, then hopefully they have some other position within the company that fits the criteria of this FCE. If they do not have this either, then he may need to find some other kind of work. However, this is going to be difficult for him based on his age, education level, FCE results, etc. I do think he has reached a point of MMI. Based on the American Medical Association "Guides to the Evaluation of Permanent Impairment," fourth edition, I would assign to him an impairment rating of 15% of the whole person.

On May 25, 2004, Dr. Bruffett reported that Mr. Tucker should make every effort to manage his symptoms nonoperatively utilizing an acceptable long-term regimen of pain medication. He further stated, "I really do not think it is going to be all that valuable or successful for him to try to go back to work at this time." In a subsequent report, Dr. Bruffett said that he did not think Mr. Tucker could perform a light/sedentary job.

Mr. Tucker was also under the care of Dr. D'Orsay Bryant. Dr. Bryant reported on March 25, 2004, "The patient asked me for a work excuse, and I told him I would not take him off work, that he could continue in his current light duty capacity." On April 22, 2004, Dr. Bryant again reported that Mr. Tucker had requested that he be taken off work, and that again Dr. Bryant refused because Mr. Tucker had a light-duty job minimizing the stress on his back.

Another functional-capacity evaluation was performed on July 5, 2005. That FCE report indicated that Mr. Tucker put forth inconsistent and unreliable effort. However, Mr. Tucker did demonstrate the ability to work at least at a light-duty classification, occasionally lifting up to twenty pounds. In a subsequent report on September 10, 2005, Dr. Bryant assessed

that, while Mr. Tucker's true capacity to work is unknown, he does qualify for the light-duty classification.

Vocational counselor Tonya Owen commenced placement services for Mr. Tucker in January 2007. Ms. Owen testified that she had discussions with appellant, conducted some vocational testing, and relied on the previous functional-capacity evaluations. According to Ms. Owen, she directed Mr. Tucker to a free computer-skills training program, but he declined to attend the program. She also prepared a resume for him and found numerous jobs that she thought he could perform, including cashier, switchboard operator, and security guard. Ms. Owen testified that the highest paying job she referred to Mr. Tucker paid $8 an hour. In a progress report dated February 28, 2007, Ms. Owen reported that Mr. Tucker's probability of success was poor and further stated,

> It is unlikely that given the lack of activity in job placement services in the first 30 days that we will be successful in placing Mr. Tucker. Although leads have been identified, I have not been provided authorization from Mr. Tucker to fax his resume to potential employers. He has not gone in person to apply for these jobs. Therefore, employer contact is not being made for either open positions or with employers who would like Mr. Tucker's application for their consideration.

> As an opportunity to segue Mr. Tucker into employment status and to increase his vocational skills, I requested that he enroll in a free of charge computer literacy class through El Dorado adult education. It is my understanding that he has not done this. His lack of enrollment in class and his lack of follow up on job leads causes me to believe that he will be ultimately unsuccessful in returning to work.

On direct appeal, Mr. Tucker argues that the Commission erred in not finding him permanently and totally disabled and in limiting his permanent wage-loss disability to only 20 percent. Based on the evidence before the Commission, we hold that there was a substantial basis to support its finding that Mr. Tucker failed to prove that he was permanently and totally disabled. However, there was no substantial evidence to support the Commission's award of only 20–percent permanent-partial disability.

In asserting his claim for permanent-total disability benefits, Mr. Tucker relies on his own testimony as well as the opinion of Dr. Bruffett indicating that there was no suitable employment within his physical restrictions. However, it was for the Commission to weigh the competing evidence, and there was evidence demonstrating that Mr. Tucker was not completely unable to earn meaningful wages. Both functional-capacity evaluations rated Mr. Tucker in the light-duty category of work, and even after his third surgery Mr. Tucker in fact worked for more than a year in a light capacity. Moreover, Dr. Bryant refused to take Mr. Tucker off work pursuant to his opinion that light work was within Mr. Tucker's limitations. And while Mr. Tucker complained about the effects of his pain medication, he was on medication when he returned to light duty and Dr. Bryant was aware of these medications. Because there was evidence to support the denial of permanent and total disability benefits, we affirm that finding.

As found by the Commission, Mr. Tucker did prove entitlement to permanent partial disability benefits. But there was no substantial evidence to support the conclusion that appellant suffered only a 20–percent reduction in earning capacity. The undisputed evidence showed that Mr.

Tucker was earning from $18 to $22 an hour at his job as a press operator, which he can no longer perform due to his injury. The appellee returned him to light duty earning $12 an hour, and it is not clear whether that work is still available. While the vocational counselor identified jobs she thought Mr. Tucker could perform, she acknowledged that none paid more than $8 an hour. This evidence demonstrates that Mr. Tucker has sustained more than a 20–percent wage loss when comparing the wages paid for the press-operator job and the subsequent light work offered by the appellee. Therefore, we reverse and remand to the Commission to award a greater percentage of permanent wage-loss benefits consistent with the evidence presented.

We next turn to Cooper Standard Automotive's cross-appeal. Its first argument is that the Commission erred as a matter of law in concluding that Ark.Code Ann. § 11–9–505(b)(3)₁₀ is inapplicable to a claim for permanent total disability, but instead provides only a defense to a claim for permanent-partial disability. We need not decide this issue because the Commission found that Mr. Tucker failed to prove that he was permanently and totally disabled, and we affirm that finding. Thus, the issue of whether the statute may be invoked to defend against a claim for permanent-total disability is a moot point.

Cooper Standard Automotive's remaining argument is that the Commission erroneously awarded partial wage-loss benefits based on an unauthorized shifting of the burden of proof with regard to the application of Ark.Code Ann. § 11–9–505(b)(3). Specifically, the Commission found that the *employer* did not prove that Mr. Tucker acted unreasonably in refusing to cooperate with the job-placement counselor, and thus that the statute was not a bar to partial wage-loss disability. It is now argued that the burden of proof should have been on Mr. Tucker to show that his refusal to cooperate was reasonable, and further that he failed to meet that burden.

We do not agree with the argument that the Commission implemented the wrong burden of proof. It is true that the injured party bears the burden of proof in establishing entitlement to benefits under the Workers' Compensation Act. *See Clardy v. Medi–Homes LTC Servs. LLC,* 75 Ark.App. 156, 55 S.W.3d 791 (2001). However, the statutory provision at issue provides a defense available to employers against claims for permanent wage-loss that might otherwise be sustainable by the claimant. In *Johnson v. McKee Foods,* 98 Ark.App. 360, 255 S.W.3d 478 (2007), this court held that an employer relying on the defense enumerated in section 11–9–505(b)(3) must show that the claimant refused to participate in a program of vocational rehabilitation or job-placement assistance, or, through some other affirmative action, indicated an unwillingness to cooperate in those endeavors, and that such refusal to cooperate was without any reasonable cause.

Thus, it was Cooper Standard Automotive's burden to establish this defense, and we affirm the Commission's finding that it failed in its burden. It is undisputed that the vocational counselor identified a list of jobs and that Mr. Tucker made no effort to pursue those jobs or any other employment. However, Mr. Tucker thought it would serve no purpose to apply for these jobs given his inability to stand for extended periods, the pain associated with his compensable injury, and the effect of his pain medication. Whether or not Mr. Tucker was in fact capable of performing any of these jobs, the Commission did not find his lack of cooperation unreasonable under these cir-

cumstances, and we affirm that finding as being supported by substantial evidence.

Affirmed in part, reversed in part, and remanded on direct appeal; affirmed on cross-appeal.

GLOVER, BAKER, and BROWN, JJ., agree.

PITTMAN and GLADWIN, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting.

I respectfully dissent from the majority's decision to reverse on direct appeal. It is true that the Commission held that appellee failed to prove that appellant so unreasonably failed to cooperate as to completely waive or forfeit his right to any wage-loss benefits under Ark.Code Ann. § 11–9–505 (Repl.2002). That does not, however, mean that appellant's lack of cooperation did not hamper the Commission's ability to determine the extent of his disability. The Commission noted the extensive evidence of appellant's inconsistent efforts during a functional-capacity evaluation, his inappropriate illness responses, and his marked lack of cooperation with the job-placement services. Observing that it was appellant's burden to demonstrate his entitlement to benefits, and considering appellant's "young age, his work experience, and [his] lack of motivation to return to appropriate work," the Commission found that appellant had sustained a twenty-percent wage-loss disability.

It was clearly difficult for the Commission to rate appellant's disability. As the Commission noted, the record is replete with evidence of appellant's unreliable and sub-maximal efforts in evaluations and his lack of cooperation and motivation. We have for many years held that a claimant's lack of interest and negative attitude are impediments to the Commission's full assessment of one's loss and are factors that can be considered in determining that his wage loss is not as great as he stated it to be. *See, e.g., Enterprise Products Co. v. Leach,* 2009 Ark. App. 148, 316 S.W.3d 253; *Oller v. Champion Parts Rebuilders,* 5 Ark.App. 307, 635 S.W.2d 276 (1982). In my view, the Commission's opinion adequately explains its decision that appellant failed in his burden of proving entitlement to more than twenty-percent wage-loss disability, and I would affirm.

GLADWIN, J., joins in this dissent.