2012 Ark. App. 169

**Larry LUNDAY, Appellant**

v.

**ENTERGY ARKANSAS, INC.; Second Injury Fund; and Death and Permanent Total Disability Trust Fund, Appellees.**

No. CA 11–801.

Court of Appeals of Arkansas.

Feb. 22, 2012.

Steven R. McNeely, Little Rock, for appellant.

Jim L. Julian and Heather Moody, Little Rock, for appellee.

ROBIN F. WYNNE, Judge.

Appellant Larry Lunday appeals from the Arkansas Workers' Compensation Commission's decision denying him permanent-total-disability and wage-loss benefits. He also appeals from the Commission's order denying his motion to vacate the opinion, arguing that the appointment of a special chairman created a bias against him. We affirm.

Mr. Lunday worked for appellee Entergy Arkansas, Inc. (Entergy) as a storekeeper for over twenty years. Medical records show that Mr. Lunday had a history of low-back pain and degenerative-disc disease. In February 1988, he suffered a compensable back injury, which resulted in surgery and physical therapy. Mr. Lunday received a ten-percent impairment rating as a result of the 1988 injury but returned to work with a permanent heavy-lifting restriction. Over the next several years, Mr. Lunday experienced ongoing back problems, and he remained under his doctor's care.

Then, in August 2006, Mr. Lunday suffered a second compensable back injury when he was struck by a cart pushed by a forklift. This injury resulted in pain and weakness in his back that kept him off of work. However, an MRI taken in September 2006 showed only mild degenerative disc and joint disease. Mr. Lunday underwent a functional-capacity evaluation in December 2006, which indicated he was capable of performing work in the medium classification. During this time, Mr. Lunday treated with Dr. Barry Baskin. Based on the functional-capacity evaluation and the lack of any new objective findings from the 2006 injury, Dr. Baskin assigned a zero-percent impairment rating and placed Mr. Lunday at maximum medical improvement on January 4, 2007. Mr. Lunday was released to work within certain lifting restrictions. However, at that time, Entergy had no jobs available within those restrictions. Thereafter, Mr. Lunday received long-term disability payments and was later approved for Social Security disability benefits.

Treatment for Mr. Lunday's injuries continued, and in September 2007, Entergy arranged for a neurosurgical evaluation with Dr. Tim Burson. A subsequent MRI showed degenerative changes and a collapsed disc. Dr. Burson recommended fusion surgery, but Mr. Lunday declined. In October 2008, Mr. Lunday began seeing Dr. William Ackerman for pain management. Dr. Ackerman initially noted that Mr. Lunday could return to light-duty work; however, he later opined that Mr. Lunday was unable to work at all. Dr. Robert Henry, an internist, also opined that Mr. Lunday would be unable to perform any job that involved prolonged sitting, standing, or significant concentration, due to his pain medications.

In March 2009, Mr. Lunday underwent another functional-capacity evaluation, which indicated he would be capable of performing light-duty work. As a result, Dr. Baskin opined that Mr. Lunday could handle work with light physical demands. Additionally, an August 2009 vocational rehabilitation review indicated that Mr. Lunday rated "good" to "very good" in employability and that he could expect to encounter almost 450 job openings within his restrictions. However, at no time since

the 2006 injury has Mr. Lunday attempted to find other employment.

Mr. Lunday, then sixty years old, sought permanent-total-disability benefits, or alternatively, wage-loss benefits, for his compensable injuries. In an opinion filed May 23, 2011, the Commission found that Mr. Lunday had not proven entitlement to either type of benefits. On May 27, 2011, Mr. Lunday filed a motion to vacate and set aside the order, arguing that the appointment of Special Chairman Gail Matthews to the Commission created an unfair bias because Gail Mathews had represented employers in previous cases before the Commission. That motion was denied, and Mr. Lunday filed a timely notice of appeal with this court.

In reviewing a decision from the Arkansas Workers' Compensation Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's findings. *Staffmark Invs., LLC v. King*, 2009 Ark. App. 830, at 2, 2009 WL 4673801. We affirm those findings if they are supported by substantial evidence, which is relevant evidence that ₄a reasonable person might accept as adequate to support a conclusion. *Id.* We will not reverse the decision of the Commission unless we are convinced that fair-minded persons considering the same facts could not have reached the same conclusions. *Id.* The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; rather, it is whether there is substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact. *Burris v. L & B Moving Storage*, 83 Ark.App. 290, 293, 123 S.W.3d 123, 125–26 (2003). It is the function of the Commission, not this court, to determine the credibility of witnesses and the weight to be given to the evidence. *Whaley v. Hardee's*, 51 Ark. App. 166, 168, 912 S.W.2d 14, 15 (1995).

"Permanent total disability" means an inability, due to compensable injury or occupational disease, to earn any meaningful wages in the same or other employment. Ark.Code Ann. § 11–9–519(e)(1) (Repl.2002). A determination of permanent total disability is to be based on the facts of the case. *Id.* § 11–9–519(c). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Enter. Prods. Co. v. Leach*, 2009 Ark. App. 148, at 3, 316 S.W.3d 253, 255. When determining wage-loss disability, the Commission should consider, in addition to medical evidence, the appellant's age, education, experience, and other matters affecting wage loss. *Glass v. Edens*, 233 Ark. 786, 788, 346 S.W.2d 685, 687 (1961). Another consideration is the claimant's motivation to return to work, as a lack of interest or a negative attitude impedes the assessment of the claimant's loss of earning capacity. *Emerson Elec. v. Gaston*, 75 Ark.App. ₅232, 237, 58 S.W.3d 848, 851–52 (2001). To be entitled to any wage-loss-disability benefit in excess of a permanent physical impairment, a claimant must first prove, by a preponderance of the evidence, that he sustained a permanent physical impairment as a result of a compensable injury. *Wal–Mart Stores, Inc. v. Connell*, 340 Ark. 475, 478, 10 S.W.3d 882, 884 (2000). The Commission may use its own superior knowledge of industrial demands, limitations, and requirements in conjunction with the evidence to determine wage-loss disability. *Taggart v. Mid Am. Packaging*, 2009 Ark. App. 335, at 5–6, 308 S.W.3d 643, 647.

On appeal, Mr. Lunday argues that he is entitled to permanent-total-disability benefits as a result of either the 1988 or

the 2006 compensable injury. However, substantial evidence supports the Commission's finding that Mr. Lunday did not prove that he was unable to earn any meaningful wages in the same or other employment. Following the 2006 injury, Mr. Lunday's treating physicians were unable to make any new objective findings, and the December 2006 functional-capacity evaluation indicated that Mr. Lunday was able to perform medium-duty work. Based on these facts, Dr. Baskin assigned a zero-percent impairment rating and placed Mr. Lunday at maximum medical improvement. Although Entergy admittedly had no work available within those restrictions, Mr. Lunday failed to prove that he could not have found appropriate work elsewhere at that time.

The evidence further shows that, two years later, Mr. Lunday was still able to perform light-duty work. Mr. Lunday argues that the opinions of Dr. Ackerman and Dr. Henry, who opined that he was unable to work, should outweigh the opinion of Dr. Baskin, who opined that he could work in some capacity. However, such a credibility determination is for the Commission to make, and in this case, the Commission placed greater weight on Dr. Baskin's opinion. Based on this evidence, we hold that fair-minded persons considering the same facts could have reached the same conclusions as the Commission.

■■■ Mr. Lunday also argues that he is entitled to permanent-total-disability benefits pursuant to the odd-lot doctrine. Although the odd-lot doctrine has been abolished as to permanent-disability claims based on injuries that occurred after July 1, 1993, Mr. Lunday argues that the doctrine is applicable to his 1988 injury. The odd-lot doctrine refers to claimants who are able to work only in a small capacity, not enough to provide meaningful wages. *M.M. Cohn v. Haile*, 267 Ark. 734, 736, 589 S.W.2d 600, 602 (1979). Under that doctrine, the fact that such claimants can work some does not preclude them from being considered totally disabled if their overall job prospects are negligible. *Id.*

In this case, Mr. Lunday has not shown that he was placed in the odd-lot category based on the 1988 injury. The evidence and testimony indicated that, following the 1988 injury, Mr. Lunday successfully returned to full-time work with Entergy. Although he claimed to experience ongoing back pain, this did not prevent him from working or earning meaningful wages. Moreover, the evidence indicated that some type of work—whether medium or light duty—was always an option for Mr. Lunday.

■■■ For the same reasons, the Commission's denial of wage-loss benefits was also supported by substantial evidence. Mr. Lunday was unable to show that he had suffered any permanent physical impairment as a result of his most recent compensable injury. Although diagnostic tests performed after the 2006 injury showed degenerative decline, there were no new objective medical findings. Therefore, Mr. Lunday was not entitled to wage-loss benefits.

■■■ As his final point on appeal, Mr. Lunday argues that the Commission's opinion should be reversed based on the unconstitutional appointment of Special Chairman Gail Matthews to decide this case. The Commission is comprised of three members appointed by the Governor. Ark.Code Ann. § 11–9–201(a) (Repl.2002). One member, who is considered to be a representative of employers, is required to be an attorney with at least five years of experience representing employers in workers' compensation matters, or a person who, on account of his or her previous vocation, employment, or affiliation, has

had at least five years of experience as an employer. Ark.Code Ann. § 11–9–201(a)(1). A second member, who is considered to be a representative of employees, is required to be an attorney with at least five years of experience predominantly representing claimants in workers' compensation matters or employees in labor relations matters, or a person who, on account of his or her previous vocation, employment, or affiliation, has had at least five years of membership in a bona fide labor organization. Ark.Code Ann. § 11–9–201(a)(2). The third member—the chair of the Commission—must be an attorney who has been engaged in the active practice of law in the State of Arkansas for not less than five years. Ark.Code Ann. § 11–9–201(a)(3). When any member of the Commission is disqualified in a pending matter for any reason, the Governor must appoint a qualified person to act as a special member for the purposes of that case. Ark.Code Ann. § 11–9–201(c)(1).

Mr. Lunday contends that Gail Matthews, who was appointed to act as Special Chairman in deciding this case, met the qualifications for the employer representative and that his participation created an unfair bias towards the employer's interests. In general, an adjudicator is presumed to be unbiased. *Quinn v. Webb Wheel Prods.*, 59 Ark.App. 272, 276, 957 S.W.2d 187, 188 (1997) *aff'd,* 334 Ark. 573, 976 S.W.2d 386 (1998). To overcome that presumption, a litigant must make a showing of a conflict of interest or some other specific reason for disqualification. *Id.* Mr. Lunday points to five exhibits to his motion to vacate, which he argues prove Mr. Matthews regularly represented employers before the Commission. Those exhibits consist of the first page of the opinions for five different cases, dated between 2009 and 2011, in which Mr. Matthews represented an employer. Without

more, we do not see how Mr. Matthews' participation in these five cases creates the bias Mr. Lunday alleges. Furthermore, in denying Mr. Lunday's motion to vacate, the Commission provided a list of twenty-two cases, dated between 1985 and 2009, in which Mr. Matthews represented claimants. This indicates that Mr. Matthews is experienced in representing both employers' and employees' interests before the Commission, and it calls into question Mr. Lunday's allegation that Mr. Matthews could only be considered an employer representative. Without a showing of a conflict of interest, we reject Mr. Lunday's argument that the Commission's decision should be reversed based on Mr. Matthews' participation.

Affirmed.

ROBBINS and ABRAMSON, JJ., agree.