Maria PINA *v.* WAL-MART STORES, INC.

CA 04-1045                                            208 S.W.3d 236

Court of Appeals of Arkansas
Opinion delivered May 11, 2005

---

*Taylor Law Firm*, by: *Jason L. Watson*, for appellant.

*Roberts Law Firm, P.A.*, by: *Michael J. Roberts, J. Matthew Maulden*, and *Caroline L. Curry*, for appellee.

LARRY D. VAUGHT, Judge. Maria Pina appeals from a decision of the Arkansas Workers' Compensation Commission overruling the Administrative Law Judge's award benefits after concluding that her claim was barred by the statute of limitations. Because we hold that substantial evidence supports the Commission's findings regarding the date on which the statute began to run, we affirm.

Pina began working for Sam's Travel in February 1999 doing a variety of tasks, including stuffing envelopes and folding promotional t-shirts. In October 1999 she complained to her supervisor of numbness in her hands that traveled up to her forearms and elbows. After making this complaint, she was reassigned to a data-entry position. She did not request medical treatment at the time. Indeed, she testified:

> No. I didn't think it was really significant. And by that time they went ahead and switched me to the computer, which it wasn't as bad as when I was doing the — writing. So, you know, I said probably it'll you know, start to ease off, but no — we still — we went ahead and kept on doing that with — with the computer. Then I got moved and it got really severe afterwards.

Pina continued in this position with Sam's Travel until the summer of 2000 when she was promoted to a position taking payments. In August 2000, the Sam's Travel office moved out of state, and she began working for Wal-Mart Associates, Inc., in accounts payable where she reviewed invoices for discrepancies. According to Pina, her job duties with Wal-Mart only required her to utilize her right hand while keying in the numbers from the invoices, while she turned the pages of the invoices with her left hand.

The medical records reveal that Pina sought medical treatment on March 8, 2000, after she was involved in a motor-vehicle accident. Pina testified that this accident did not involve an injury to her hands or wrists. Dr. Huskins recorded complaints of "immediate onset of pain in the neck, back, shoulders from the lumbar area up. Has had numbness in her hands." In a follow-up visit with Dr. Huskins's partner, Dr. Lueders, Pina complained of "still having chronic numbness and tingling that radiates down her arms." On January 26, 2001, Pina became a patient of Dr. Kim Emerson. Although Pina only sought an annual PAP exam at that time, Dr. Emerson performed a thorough examination and recorded complaints of knee, elbow, and wrist pain bilaterally for which Pina took 800mg of Ibuprofen on a daily basis. Dr. Emerson further recorded, "[S]he does (sic) numbness of her hands and she has to let go of what she is doing and then she feels a burning sensation. She is awakened at night. . ." During her examination of Pina, Dr. Emerson noted among other things that Pina had "positive tinels and phalens bilaterally. Decreased sensation of the ulnar and radial aspects of digits 1-4 are noted[.]" Pina testified that she noticed an increase in her symptoms when the numbness and tingling started going up her arm with a burning sensation. According to her testimony on direct examination, she did not notice a worsening or increase in her symptoms until January 2002, which was what prompted her to report her injury to her supervisor. Pina completed an "Associates Statement" for workers' compensation on January 30, 2002. In this statement she alleged that she injured both her hands. Wal-Mart sent Pina to Dr. Gary Moffitt for an evaluation at that time. In his report dated January 31, 2002, Dr. Moffitt wrote:

> Ms. Pina is seen today with complaints of pain, numbness and weakness in both hands. It has been bothering her for at least the past few weeks. She has no specific injury. She works doing data entry. She is having symptoms whenever she sleeps. On her examination, there is no swelling or discoloration. Her grip does

seem to be somewhat diminished. She has a negative Tinel's but she has abnormal two point discrimination in the median nerve distribution bilaterally. She probably has carpal tunnel syndrome. I am recommending nerve conduction studies. She may continue to work but will need to limit her gripping with both hands. I would recommend no more than two hours a day of data entry. She is to be reevaluated in one week.

On April 15, 2002, Pina underwent an NCV/EMG performed by Dr. Miles Johnson. In his report of that same date, Dr. Johnson stated that Pina's studies were consistent with a diagnosis of moderate to moderately severe carpal-tunnel syndrome on the right and moderate carpal-tunnel syndrome on the left. As a result, Pina consulted with Dr. Rodger Dickinson, Jr., an orthopedic surgeon. In a report dated April 17, 2002, Dr. Dickinson noted:

I have seen Ms. Maria Pina because of pain and numbness of both hands [sic] which she has been experiencing for over a year. She has a history of doing a lot of repetitive motion, i.e., keypunch-type of operation computer work. She complains of pain and numbness consistent with carpal tunnel. EMG and nerve conduction also confirm the diagnosis of carpal tunnel syndrome. I certainly think that her occupation is of contributory nature to her carpal tunnel symptoms.

On April 18, 2002, Pina signed a "Claim for Compensation" against Wal-Mart, which was mailed by her attorney to the Workers' Compensation Commission on April 23, 2002. On cross-examination, Pina confirmed her deposition testimony that she first became aware that her carpal-tunnel problems were work-related in October 2001. She confirmed her deposition testimony that she began to feel the numbness in her hands around October 2000. However, Pina also admitted that she actually experienced numbness and tingling in her hands, forearms, and elbows by October of 1999, while working at Sam's Travel.

Based on these admissions, Wal-Mart contends that Pina's claim — first filed in April of 2002 — is barred by the statute of limitations. In response Pina argues that the statute of limitations did not begin to run until a nexus between her injury and her work environment was established and her condition stabilized. The ALJ agreed with Pina's position and concluded that she sustained a compensable injury and was entitled to medical benefits. How-

ever, the Commission reversed the ALJ's decision and dismissed Pina's claim after concluding that her claim was time barred. Pina appeals the Commission's decision, claiming that there is no substantial evidence to support this conclusion.

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence, *i.e.*, evidence that a reasonable person might accept as adequate to support a conclusion. *Morales v. Martinez*, 88 Ark. App. 274, 198 S.W.3d 134 (2004). The issue is not whether this court might have reached a different result from that reached by the Commission, or whether the evidence would have supported a contrary finding. *Smith v. County Market/Southeast Foods*, 73 Ark. App. 333, 44 S.W.3d 737 (2001). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* The Workers' Compensation Commission is not required to believe the testimony of any witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief; once the Commission has made its decision on issues of credibility, we are bound by that decision. *Emerson Elec. v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001).

Our singular task on appeal is to determine the point in time that Pina sustained a compensable injury. It has long been held that the statute of limitations does not commence to run until the true extent of the injury manifests and causes an incapacity to earn wages sufficient to give rise to a claim for disability benefits. *Hall's Cleaners v. Wortham*, 311 Ark. 103, 842 S.W.2d 7 (1992); *Donaldson v. Calvert-McBride Printing Co.*, 217 Ark. 625, 232 S.W.2d 651 (1950); *Shepard v. Easterling Constr. Co.*, 7 Ark. App. 192, 646 S.W.2d 37 (1983). Act 796 of 1993 provides that for purposes of statute of limitations, "the date of compensable injury shall be defined as the date an injury is caused by an accident as set forth in § 11-9-102(5)." However, this amendment did not address the injury date with regard to gradual-onset injuries — the type presented in Pina's claim. In *Minnesota Mining & Manufacturing v. Baker*, 337 Ark. 94, 982 S.W.2d 11 (1999), our supreme court addressed when a scheduled injury claim becomes compensable for statute of limitations purposes. In *Baker*, the court reasoned that loss of earnings are conclusively presumed in scheduled-injury cases; therefore, the

statute of limitations begins to run when the scheduled injury became apparent to the claimant. Here, because Pina's injuries are scheduled under the Workers' Compensation Act, the statute of limitations began to run when the injury became apparent to her. The Commission determined, based on her testimony, that Pina's injury became apparent at least by the date she reported her symptoms of pain and numbness to her supervisor in October 1999 and she was provided accommodations by her employer.

However, the Commission acknowledged that "it may be argued that the dicta in *Minnesota Mining & Mfg. v. Baker, supra,* in which the court stated that statute of limitations began to run in that claim in February of 1978 because that claimant's hearing loss had not ceased to deteriorate until then, stands for the proposition that the statute of limitations does not begin to run until the claimant becomes aware of his injury and the injury has stabilized." This is precisely the argument that Pina makes on appeal. Pina argues that *Baker* requires both the awareness of an injury and the stabilization of the injury prior to the commencement of the running of the statute of limitation.

The initial claim in *Baker* was for permanent disability benefits. Therefore, in order to be entitled to permanent disability benefits, the hearing loss had to reach a point of stability. Accordingly, it is our view that the requirement that the injury stabilize is limited to hearing-loss claims, and the *Baker* dicta supports only a narrow view of the stabilization requirement. Further, in hearing-loss claims the annual hearing tests quantify the amount of loss experienced by the claimant. Such annual testing objectively demonstrates the amount of loss and the time period in which the loss occurred, removing all elements of subjectivity as to time and amount of loss from the fact finding.

Thus, because the *Baker* dicta is not applicable to the present case, we must simply determine if substantial evidence exists to support the Commission's conclusion that Pina's carpal-tunnel syndrome developed and became apparent to Pina by October 1999, while working for Sam's Travel.[1]

---

[1] Had Pina been able to rely on the *Baker* dicta and argue that her injury did not manifest until it had fully stabilized, Pina's claim would still fail. The Commission made a finding that the only evidence of continued deterioration was Pina's own self-serving testimony — which is a credibility determination that would withstand appellate scrutiny.

■ Pina argues that she did not become aware of her diagnosis until she was examined by Dr. Moffitt in January 2002 and that she was not aware that her condition was work-related until at least October 2001. However, a claimant's awareness that her injury is causally related to the working environment is not an element of the inquiry. *See Smith v. Aluminum Co. of Am.*, 78 Ark. App. 15, 76 S.W.3d 909 (2002). The medical evidence shows that Pina was diagnosed with carpal-tunnel syndrome by Dr. Emerson in January 2001, one year prior to the diagnosis by Dr. Moffitt. Further the medical records show that Pina consistently complained of numbness in her hands and wrists after October 1999.

It is true that Pina testified that she believed her symptoms would resolve when she was given a computer to perform her work after her initial complaint to her supervisor in 1999. However, she admitted at the hearing that her symptoms never resolved. The Commission concluded that, because her symptoms were sufficient to voice a complaint to her supervisor in October 1999, her injury became apparent to her by at least October 1999. Therefore, the Commission ruled that because Pina did not file her claim for benefits until April 2002, the claim was barred by the statute of limitations.

■ Because this finding is supported by substantial evidence — particularly Pina's acknowledged report of her symptoms to her supervisor — we are obligated to affirm. In so doing, we are mindful that our analysis and conclusion punish those employees willing to "grin and bear it" and produce the counter result of encouraging employees to file claims at the first hint of pain. Whether this result properly serves the public policy surrounding workers' compensation law is a question reserved for our legislature.

Affirmed.

GLOVER and BAKER, JJ., agree.