RITA W. GRUBER, Chief Judge
Appellants Arkansas Department of Correction (ADC) and Arkansas Insurance Department Public Employee Claims Division appeal from a decision of the Arkansas Workers' Compensation Commission (Commission) adopting the decision of the administrative law judge (ALJ) finding appellee Franklin Clary had proved that he sustained a compensable left-knee injury and ordering appellants to pay medical expenses and temporary-total disability benefits (TTD). The only issue on appeal is whether substantial evidence supports the Commission's decision. We affirm.
At the time of the injury, appellee worked as a correctional officer at the ADC. He testified that on Saturday, November 21, 2015, he was escorting a prisoner downstairs along with his supervisor, Sgt. Kevin Nunnery, when he felt a "pop" in his left knee. He described how they stopped for a minute, he rubbed his left knee, Sergeant Nunnery looked at him, and then they proceeded to take an inmate to the shower. He testified that he told Sergeant Nunnery about his knee popping at that time and indicated that it was protocol to inform the supervisor, but he did not mention it again because they were shorthanded and he was trying to finish his shift. While appellee knew that an incident report needed to be filed, he explained that they were shorthanded and busy at the time of the incident so he continued working. He worked the entire shift but switched with other officers in the control booth three times to get off his knee. Appellee went home, iced his knee, and took ibuprofen.
When he went to work the next day, he could walk, but his knee was swollen and sore. He stated that he was assigned to the control booth that day and reported to Lt. Nicola Kelly. He testified that he and Lieutenant Kelly discussed the upcoming Thanksgiving potluck and that he told her he was glad to be in the control room because his knee was swollen from working on Saturday. Appellee stated that Lieutenant Kelly did not offer him workers' compensation paperwork, nor did he ask for medical treatment because he did not know the severity of his injury at that time. Appellee knew Sunday evening when he got home that he needed to see a doctor because his knee was hard to bend. On Monday morning, he saw Dr. Kirk Reynolds, an orthopedic surgeon whom he had previously seen. Dr. Reynolds drew fluid off the left knee and ordered work restrictions of no bending and minimal standing. Appellee did not call appellant on Monday morning when he realized it was a workers' compensation claim because he knew he had to give the work restrictions to his supervisor, and he was not scheduled to work again until Wednesday, November 25.
When appellee went to work on Wednesday, Lieutenant Kelly sent him home because there was no light duty within his restrictions. Later that day, he called human resources to ask about the 005-incident report, returned to complete it, and gave it to Lieutenant Kelly. Appellee testified that his claim was denied and he sought treatment on his own. He had surgery on December 8 and was released by Dr. Reynolds to work with no restrictions on January 18, 2016. His last day to work for appellant was November 22, 2015, as *488 he was terminated on December 29, 2015. After he was released to work, appellee began to work for Loomis, an armored-car company.
Sergeant Nunnery testified at the hearing before the ALJ. He explained that at the beginning of each day there was a short meeting where he received assignments from the lieutenant and found out which six officers he would supervise that day. He would see those officers at the meeting and several times during the shift, and all had radios to communicate if they needed assistance or had an incident. He explained that taking the inmates to the showers was part of the duties he would have done with appellee, as it requires two officers for one inmate. Sergeant Nunnery did not remember appellee reporting an injury to his knee. If an injury had been reported, he explained that he would have gone straight to the lieutenant, called the company nurse, and completed the paperwork.
In his six or seven years as a sergeant and his thirteen years working for the ADC, Sergeant Nunnery had never reported an injury. He did not recall if they were busy that day, but he stated that Saturdays were busy with showers and visitation all day and that they were usually shorthanded. Sergeant Nunnery did not recall appellee going to the control booth that day, but indicated that they often traded out to give the officer on the floor some relief as it was usually busy. He testified that he would not file an incident report if someone told him his or her knee had "popped" like an ordinary joint pop and did not need medical attention. He would file a report if someone told him his knee had "popped out." He testified that if his knee had popped and had a bit of soreness, he would not report that for himself.
The last witness to testify at the hearing was Lieutenant Kelly, who was supervisor over the entire shift. She had been in her current position for about two years and had been a sergeant the previous seven years. During these years as a supervisor, she had reported several workplace injuries. She explained that the procedure was to notify her as the supervisor, complete a urinalysis, and call the company nurse to report. At that point, the nurse would give a confirmation number and send the worker for either medical attention or back to work. The injured employee was required to fill out the form 005, which could be signed by the sergeant but ultimately was signed by the lieutenant.
Lieutenant Kelly was working on Saturday, November 21, and Sunday, November 22. She recalled appellee reporting an injury to her on Wednesday, November 25, when he was scheduled to return to work. She questioned appellee as to why he did not report the injury, but he stated that he had reported it to his sergeant. Lieutenant Kelly explained that if appellee was working with Sergeant Nunnery at the time of his injury, it was the sergeant's responsibility to have the officer complete the incident report and to notify the lieutenant. The lieutenant would then bring the injured employee to the office and call the company nurse. She indicated that appellee likely worked the control booth on Sunday, November 22, as he had worked there numerous times. It was a standing job requiring the officer to move side to side between two control panels. She did not consider it to be lighter work, but it did not require walking all over the prison or up and down stairs. She acknowledged that sometimes there might be a chair in the control booth, but that the job mostly required standing.
Lieutenant Kelly recalled talking to appellee in the past about problems with his leg as well as his heart and other illness, but he never complained about not being *489 able to work. Although she could not recall specific days, she had talked to him about his knee, and she told him about her knee problems and scheduled knee surgery. When asked if appellee was a good employee, she replied, "Very good to me. Good heart. Hard worker."
The medical records indicate that appellee began seeing Dr. Charles Clark for his right knee in 2006. Dr. Clark performed surgery for patellofemoral syndrome on the right knee in January 2006 and on the left knee in February 2006. Appellee saw Dr. John Lytle for bilateral knee pain in November 2008. There was no history of trauma, and the pain was worse in the right knee. Results of the physical exam were consistent with "early degenerative meniscus involvement." Dr. Lytle recommended an MRI of the right knee[1] and if the results confirmed meniscus involvement, he would recommend arthroscopic intervention. If the results showed simple degenerative changes, he would recommend conservative management.
On June 18, 2015, appellee saw his family physician, Dr. Mary Howard, for right-knee pain lasting two days attributed to climbing up and down stairs at work. Dr. Howard noted "obvious edema" of the right knee as compared to the left, and limping. He was referred to orthopedic surgeon Dr. Kirk Reynolds. Appellee saw Dr. Reynolds on June 24, 2015 and reported a "contusion to the anterior aspect of the right knee about one month ago." It was noted that his pain started one week prior when he noticed swelling and that the pain worsened when bending or going up and down stairs. Dr. Reynolds recommended obtaining a new MRI of the right knee. Appellee saw Dr. Howard on June 26 and July 10 for follow-up of his right-knee pain. The July 10 notes indicated appellee could not have an MRI due to his pacemaker, and a CT scan was scheduled for July 14. He returned to Dr. Reynolds on July 20. Based on the CT scan of the right knee, Dr. Reynolds recommended a topical anti-inflammatory cream and physical therapy. Appellee saw Dr. Reynolds again on July 31 for follow-up of the right knee and reported left-ankle pain. He was seen on August 4 for left-foot pain and on October 10 for bilateral ankle pain and foot swelling with the right side being more severe. Appellee saw Dr. Howard on November 13 for bilateral foot pain and possible gout.
On November 23, appellee saw Dr. Reynolds and reported an injury that occurred on Friday. Dr. Reynolds's notes indicate,
[A] twisting injury to his left knee when he was going up and down some stairs. He felt a large pop in the medial aspect of the left knee. He had immediate onset of pain and developed a rather large effusion. He has had difficulty with range of motion and weightbearing since that time.
Dr. Reynolds's assessment was "[l]eft knee pain and effusion after a twisting injury with a pop. This likely represents a medial meniscus tear. He could also have gouty arthropathy." Dr. Reynolds recommended draining the left knee and a corticosteroid injection because he did not think a CT scan would be helpful and appellee was unable to have an MRI. The draining obtained 125 ml of synovial fluid.
Appellee was seen again on December 4 and reported that his symptoms had initially improved, but they returned after one week. He had more "mechanical symptoms of catching and locking." Examination of the left knee revealed a trace effusion with tenderness to palpitation along the medial joint line with positive medial McMurray sign. Dr. Reynolds's assessment *490 was that the persistent knee pain and mechanical symptoms were consistent with a medial meniscus tear. Due to the inability to perform an MRI, Dr. Reynolds recommended a diagnostic arthroscopy of the knee to evaluate the medial meniscus. Surgery was performed on December 8, which revealed a medial meniscus tearand extensive synovitis. Appellee returned for postoperative follow-up with no complaints and was ultimately released to work after his appointment on January 18, 2016.
After the October 2016 hearing, the ALJ found appellee had proved by a preponderance of the evidence that he had sustained a compensable left-knee injury, that he was entitled to payment of medical expenses, and that he was entitled to TTD benefits from December 4, 2015, to January 18, 2016, during which time appellee remained in his healing period unable to work. Appellants appealed the ALJ's decision to the full Commission, who affirmed and adopted the decision of the ALJ.
For their sole argument on appeal, appellants contend that substantial evidence does not support the Commission's decision that appellee suffered a compensable injury and is therefore not entitled to medical and TTD benefits. In reviewing decisions of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. La-Z-Boy Mfg., Inc. v. Bruner , 2016 Ark. App. 117, at 5, 484 S.W.3d 700, 703. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. Get Rid of It Ark. v. Graham , 2016 Ark. App. 88, at 10, 2016 WL 537389. We will not reverse the Commission's decision unless fair-minded persons with the same facts before them could not have reached the Commission's conclusions. Id. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding. Id. Furthermore, we are bound by the Commission's determinations on issues of credibility. Pina v. Wal-Mart Stores, Inc. , 91 Ark. App. 77, 83, 208 S.W.3d 236, 239 (2005).
To prove the occurrence of a specific-incident compensable injury, the claimant must establish by a preponderance of the evidence (1) that an injury occurred arising out of and in the scope of employment; (2) that the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) that the injury is established by medical evidence supported by objective findings, as defined in Ark. Code Ann. § 11-9-102(16) ; and (4) that the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i)-(ii) (Repl. 2012).
First, appellants argue that appellee failed to establish by a preponderance of the evidence that the injury was caused by a specific incident because appellee failed to report the injury on Saturday, November 21, when it allegedly occurred or when he worked on November 22; instead he waited until he returned for his next shift several days later and after he had gone to the doctor. The testimony regarding appellee's report of his injury, as set out above, was conflicting. Appellee testified he was escorting a prisoner down the stairs with his supervisor when he felt his knee pop, and he reported it to him. His supervisor testified that he did not recall the incident but acknowledged that it was a task he would have done with appellee. Appellee did not mention it again because they were shorthanded and he was trying to finish his shift. Although appellee knew an incident report needed to be filled out, he explained that he did not *491 because they were busy. He worked the entire shift but switched with other officers in the control booth three times to get off his knee. When he went to work the next day, he could walk, but his knee was swollen and sore.
He was assigned to the control booth on Sunday and reported to Lieutenant Kelly. He testified he told her he was glad to be in the control room because his knee was swollen from working on Saturday. Lieutenant Kelly recalled talking to appellee about the potluck, but she stated that he did not report the injury until November 25. Dr. Reynolds's notes from appellee's November 23 visit indicate that appellee had an injury to his left knee when he was going up and down stairs, and felt a large pop in his left knee. Appellants question appellee's failure to report the injury after going to the doctor on November 23, but appellee explained that there was no point in reporting it until he returned for his shift on November 25 because he knew there was no light duty. Appellants also point to the fact that appellee claimed he did not know the severity of his injury at the time it occurred and that he did not immediately seek medical treatment as indicating that he did not sustain a compensable injury.
In Pafford Medical Billing Services, Inc., Firstcomp Insurance Co. v. Smith , 2011 Ark. App. 180, 381 S.W.3d 921, the employer appealed the Commission's decision finding a compensable specific-incident injury where the employee did not report the injury that day or seek immediate medical treatment because she did not initially think it was significant, but rather thought it was a muscle strain. As in our case, the evidence about the incident came from the claimant, whom the ALJ and Commission found to be credible. The ALJ and the Commission in that case noted that the medical evidence corroborated the claimant's testimony as to the occurrence and cause of injury.
Appellants contend that appellee's testimony regarding his injury is self-serving and must be questioned, setting forth reasons that reasonable minds could not come to the same conclusion with respect to appellee's credibility. When considering all the evidence, the ALJ and the Commission found appellee to be a credible witness. It is well settled that we are bound by the Commission's determinations on issues of credibility. Pina , 91 Ark. App. at 83, 208 S.W.3d at 239. Furthermore, the ALJ noted that it was not surprising that Sergeant Nunnery did not remember appellee's mentioning his knee popping because he testified that he would not have filled out an incident report for this type of complaint. Appellee's credibility was exclusively for the ALJ and the Commission to decide, and there is no merit to appellants' argument that appellee failed to meet his burden of proof on this point.
Appellants also contend that that appellee did not establish a causal connection between the "pop" he described as insignificant and the surgery he had. Appellants claim that the treatment for his left knee resembles his treatment for his right knee, which he did not claim as having resulted from a specific-incident injury at work. It is further argued that the medical evidence establishes a longstanding problem with both knees, as well as various other medical problems for which appellee received treatment.
Dr. Reynolds's November 23 notes indicate that appellee had a twisting injury to the left knee from going up and down stairs and that he felt a pop in the medial aspect of his knee. The assessment was "[l]eft knee pain and effusion after a twisting injury with a pop. This likely represents medial meniscus tear. He could also have gouty arthropathy." Dr. Reynolds observed *492 swelling and drained fluid from the left knee. When appellee returned to Dr. Reynolds on December 4, Dr. Reynolds noted that appellee's persistent knee pain and mechanical symptoms were consistent with a medial meniscus tear. Due to the inability to perform an MRI, Dr. Reynolds performed exploratory surgery on December 8, which revealed a very small meniscus tear with extensive synovitis.
The ALJ's opinion acknowledges appellee's longstanding knee problems. However, the ALJ stated appellee felt his left knee pop and developed edema and a limp. It was noted that fluid had to be aspirated from his knee. The ALJ found these to be objective medical findings to clearly establish a new injury. The ALJ elaborated that the employer "takes the employee as he finds him" and employment circumstances that aggravate preexisting conditions are compensable. St. Vincent Infirmary Med. Ctr. v. Brown , 53 Ark. App. 30, 33, 917 S.W.2d 550, 552 (1996) (citing Pub. Emp. Claims Div. v. Tiner , 37 Ark. App. 23, 822 S.W.2d 400 (1992) ). In addition, the surgery revealed a small medial meniscus tear.
Viewing the evidence in the light most favorable to the Commission's findings, we hold that substantial evidence supports its decision that appellee had proved a compensable specific injury to his left knee and that he was entitled to medical expenses and temporary total-disability benefits.
Affirmed.
Harrison and Glover, JJ., agree.

The results of the recommended MRI are not in the record or the addendum.