WAYMOND M. BROWN, Judge
Appellants Luther F. Graves and FirstComp Insurance Company (collectively "Graves") appeal from the Arkansas Workers' Compensation Commission's (Commission) January 13, 2017 opinion affirming and adopting the administrative law judge's (ALJ) June 7, 2016 opinion in favor of appellee. On appeal, Graves argues that (1) appellee's claim is time-barred by Arkansas Code Annotated section 11-9-702(a) ; and (2) the Commission erred in finding that he is estopped from asserting the statute-of-limitations defense because appellee had actual notice of the existence of a workers' compensation policy. We affirm.
I. Facts
On August 26, 2013, appellee fell from a ladder and was injured while working on a construction crew assembled by Graves. Appellee initially filed a complaint in the Phillips County Circuit Court against Ray Dawson, Jr., and Dixie Planting Company (Dixie)[1] on May 14, 2014.[2] Dixie filed a motion to dismiss and brief in support on June 3, 2015, asserting that the Commission has sole jurisdiction of the factual issue of whether appellee was an employee or an independent contractor. At some point, the matter was brought before the Commission for a determination of the employment relationship between Dixie and appellee.[3] The circuit court entered an order *450 on July 8, 2015, staying the matter pending "the disposition of [appellee's] workers' compensation claim."
Appellee filed a complaint against Graves in the Phillips County Circuit Court on August 31, 2015, alleging that he was Graves's employee and not an independent contractor, and that Graves was negligent and failed to provide workers'-compensation insurance. Graves answered the complaint on September 28, 2015, denying all allegations in the complaint in material part and seeking dismissal of the same. Graves also filed a motion to dismiss and brief in support on the same date alleging that the circuit court lacked jurisdiction as the Commission has exclusive, original jurisdiction to determine employment relationships; appellee responded October 8, 2015.
In Dixie's September 3, 2015 prehearing information,[4] it listed the employer-employee relationship as the only issue, claiming that appellee was not its employee, but was "an independent contractor or the employee of an independent contractor." On the same date, appellee submitted his prehearing questionnaire in which he listed the issues to be litigated, among other irrelevant items to this appeal, as (1) whether he was an employee of Dixie; (2) whether he sustained a compensable injury on August 26, 2013; (3) whether he was entitled to reasonable and necessary treatment; and (4) whether he was entitled to temporary and/or permanent total-disability benefits.
On October 13, 2015, appellee responded to Graves's motion to dismiss, asserting that Graves breached the duties of his workers'-compensation insurance policy-including his obligation to report appellee's claim-"thereby making it unenforceable and not effective under these circumstances." On November 9, 2015, the ALJ entered an order joining Graves and his workers'-compensation insurance carrier, FirstComp Insurance Co., as parties to the proceedings. He did so "pursuant to a motion filed herein by Dixie Planting Co."[5] and "based on information growing out [sic] disclosure to the attorney for the claimant regarding employment and workers' compensation insurance status[.]"
In Graves's December 7, 2015 response to the prehearing questionnaire, he denied that "any employment or contractor/subcontractor relationship" existed at the time of appellee's injury, asserting that appellee was "an independent contractor for Dixie Planting Co., or one of the entities owned by Ray Dawson." He alternatively asserted a statute-of-limitations defense and that there was a lack of notice until November 9, 2015. On December 17, 2015, Graves notified the ALJ in correspondence that while his prehearing questionnaire indicated employment relationship and compensability as issues to be litigated, he was also asserting a lack-of-notice and statute-of-limitations *451 argument for the hearing. This was acknowledged by the ALJ in his correspondence dated December 21, 2015.
On March 1, 2016, Dixie filed a motion to dismiss, alleging that appellee originally filed a claim against them "under the assumption" that Graves had no insurance; however, it had been discovered that Graves was insured. Dixie then stated that Graves had admitted that appellee was his employee on all applicable dates on February 29, 2016; therefore, there was no "uninsured sub-contractor" situation. Dixie argued, accordingly, that it should be dismissed because it was not responsible for the claim since Graves was insured.
On March 7, 2016, appellee submitted his brief in opposition to Graves's statute-of-limitations defense, asserting that Graves's failure to disclose that he had workers'-compensation insurance and his statement "misrepresent[ing] the issue of insurance by telling his employees that he did not have insurance" showed that he failed to follow the notice provisions of Arkansas Code Annotated sections 11-9-403 and 11-9-407. He argued that the statute-of-limitations defense provided by Arkansas Code Annotated section 11-9-702(f)(1) was tolled by Graves's actions. On the same date, appellee also responded in opposition to Dixie's motion to dismiss; Graves never responded to the motion. Also on March 7, 2016, Graves responded to appellee's "request to interject new issues[,]" specifically fraud and estoppel. Finally, also on the same date, Graves confirmed that he had accepted the employer/employee relationship between himself and appellee and identified the issues to be litigated as compensability, entitlement to benefits, statute of limitations, notice, and attorney's fees.
A hearing was held on the matter on March 9, 2016. Appellee testified that "he was working with [Graves] when [he] got hurt, for Ray Dawson." Graves hired him. He had worked for Graves "about six or seven years, maybe a little longer" at the time of the accident. He received a hat with "L.F. Graves Construction" printed on it and he understood that phrase "to refer to the five guys, the crew[,]" which included him. Appellee testified that Graves "would get the jobs and we would do them and then the people that we worked for gave us a check." As far as hours and instructions on what was to be done, Dawson "mainly" told Graves "who then told Teddy [Hopper], who then told [them]."
Appellee never told Dawson what his rate of pay was or how he wanted to be paid; that was negotiated by Graves. He received a raise twice during his years of work; both "came from Graves." He testified that Dawson gave him checks up until he was injured. They were always paid by the individual on whose property they were working; Graves would tell him that he was an employee of the person who writes the checks. Graves never paid him, never deducted any Social Security, and never took out any withholding taxes. Graves told him when he hired him that "there's no workman's comp, no insurance, no nothing. In those exact words." When Graves would see workers "going up high, he'll say [to appellee] to remind [the worker] that there ain't no workman's comp and there ain't no insurance and there ain't no nothing." Not having taxes taken out was a "fairly common" arrangement in the Phillips County area. He thought he was "working for Dawson because [Dawson] provided [him] with the checks and paid for the work [they] did." Dawson gave appellee his 1099 at the end of the year.
Though appellee did not have any contact with Graves after August 26, 2013, Graves was there on the day he fell off the *452 ladder and knew he was injured. Appellee never submitted medical bills to or asked for "off-work pay" from Graves and never contacted Graves to request benefits or pursue a claim, but that was because he thought he was working for Dawson. He did not ask Graves about workers' compensation after his injury and did not investigate whether Graves had any on his own. Graves never told appellee that he could not file a workers'-compensation claim or that he did not have a workers' compensation policy after his August 26, 2013 injury, but Graves "always told them there ain't no insurance"-as he had told "everybody on the job"-so he "assumed [Graves] didn't have any." He knew Graves had workers'-compensation insurance "towards the end of 2014" but did not do anything with the information because he thought they were working for Dawson. He received the information about Graves having workers' compensation insurance as a rumor from someone on another crew; Graves never told him. He never saw any notice posted that Graves had workers'-compensation insurance and never knew he had the same. If they were working a "big job[,]" he worked under Graves's license.
Teddy Hopper, brother of appellee, also worked on the crew with appellee and he testified below. He stated that "[w]hoever [they] worked for paid [them]," not Graves, and that that had been the arrangement for "about ten years." He identified Graves as the general contractor and overseer of the jobs, which Graves would get. Graves would then call the crew of five guys whom Teddy considered to be Graves's crew. Dawson would typically give their checks to Graves, who would pass them out, though Dawson would hand them out sometimes; it was the same with other jobs for other people. Graves never wrote Teddy a check in the ten years he worked for Graves. If a customer wanted something specific, he or she would go to Graves first. He confirmed appellee's testimony that Graves told them that he did not have insurance when they were hired-Graves "never said anything about having worker's comp insurance"-and that "whoever [they] work for is supposed to take care of all that stuff." He confirmed hearing rumors that Graves had a workers'-compensation policy. Graves never told him he did not have workers' compensation after the rumors, but he also never told him that he had workers' compensation insurance thereafter. He confirmed that Graves was on the site the day appellee was injured and "went over and saw that he was hurt." Graves would call and check with him about "how [appellee] was getting along."
Ninety-five-year-old Graves testified that he was "just a crew member like the rest of them" and was paid hourly, though he was paid "a little more than the guys did because [he] was the one who would go out and get the jobs." He has been working in construction for probably thirty years and had always had "this type of crew" where someone would call for a project, he would assemble the crew, and the owner would pay the salary. He asserted that the crew would turn in their time by the hour and "would be working for the owner." He paid his own taxes, including Social Security, and told each guy that "[he] hired" that he had to pay his own taxes. The decision to have everyone paid hourly was not done to "try and avoid taxes or liability." It is just the way things are done and "works out cheaper for the owner" because "he didn't have to pay nothing extra." He could fire a crew member if he did not like or need the person. He had "pretty much the same crew."
Graves testified to getting a workers'-compensation insurance policy in February *453 2013 because they[6] "had come up with a law that you had to have workers' comp to get a state license"; he never had a policy before that time. He obtained the policy from Hargraves Insurance Company (Hargraves), but asserted that his insurance provider "never told me what to do or anything." Graves never said anything about the policy to appellee because Graves thought he was dealing with Dawson. He "had no idea" what made a person an employee under Arkansas workers' compensation law because he "had never been told." He went to Hargraves immediately after being served with the complaint. Nobody asked him about workers'-compensation insurance as "[t]hey were working for [Dawson] and he was paying them and they thought [Dawson] would be responsible for the guy getting hurt." Graves asserted that appellee was not his employee. He told "the people [they] worked for that [the crew members were] their employees[.]"
Graves did not have an office or building, working instead out of his truck, and owned no heavy equipment. He admitted that he "might have" told the crew members that he did not have workers'-compensation insurance before he obtained it, but denied that he did so after he obtained it. In any case, he admitted that he did not notify his crew members that he had obtained workers'-compensation insurance and did not notify his insurance provider that appellee had been hurt on the job. He also admitted checking in on appellee through Teddy and knowing that appellee was "seriously injured because we were the ones who called the airplane to take him to The MED."[7] Appellee came back to work two or three days after he had got hurt, but then he quit.[8]
The ALJ filed his opinion on June 7, 2016, in which he found that the fact that appellee sustained an accidental fall on August 26, 2013; the extent of appellee's injuries; and the reasonableness and necessity of the medical treatment received by appellee were not in dispute. In part pertinent to this appeal, he further found (1) that the employee-employer carrier relationship existed between appellee and Graves at the time of appellee's injury; (2) that appellee was temporarily totally disabled from August 25, 2013, until a date yet to be determined;[9] and (3) that Graves had notice of appellee's August 26, 2013 injury and failed to post notice of compliance pursuant to Arkansas Code Annotated section 11-9-407, and so was estopped from asserting a statute-of-limitations defense to appellee's claim. Regarding his finding that Graves was estopped from asserting a statute-of-limitations defense, the ALJ specifically found that appellee "relied on the conduct of [Graves], and indeed filed his initial workers' compensation claim against [Dixie] because he had been informed by [Graves] that [appellee] worked for [Dixie]." Dixie was found to have no liability on appellee's claim and was dismissed from the matter.
Graves then timely appealed to the Commission, which affirmed and adopted the opinion of the ALJ in its opinion filed January 13, 2017.[10] This timely appeal followed.
*454 II. Standard of Review
On appellate review, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence.[11] Substantial evidence exists if reasonable minds could reach the Commission's conclusion.[12] We will not reverse the Commission's decision unless fair-minded persons with the same facts before them could not have reached the Commission's conclusions.[13] The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding.[14] Questions of weight and credibility are within the sole province of the Commission, which is not required to believe the testimony of the claimant or of any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief.[15] Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision.[16]
III. Time-Barred
Graves's first argument on appeal is that appellee's claim is time-barred by Arkansas Code Annotated section 11-9-702(a). He argues that appellee never filed a claim within the required time period, stating that even if we count appellee's filing of his complaint against Graves in circuit court as the official filing of his claim, the complaint was filed after the two-year period, and therefore his claim is barred.[17] While we agree that appellee never filed a workers'-compensation claim against Graves and that appellee's complaint against Graves was filed more than two years after the date of injury, we still disagree that appellee's claim is time-barred.
Arkansas Code Annotated section 11-9-407 requires that
(a) Every employer who has secured compensation under the provisions of this chapter shall keep posted in a conspicuous place in and about the employer's place of business typewritten or printed notices in accordance with a form prescribed by the Workers' Compensation Commission. The notices shall state that the employer has secured the payment of compensation in accordance with the provisions of this chapter.
(b) The notices shall contain the name and address of the carrier, if any, with whom the employer has secured payment of compensation and the date of the expiration of the policy.[18]
*455 The posting required by this statute was noted by the ALJ to be found on Form AR-P of the "Workers' Compensation Instructions to Employers and Employees." Appellee and Teddy testified that they had been told by Graves, at the time of their hiring, that he did not have workers'-compensation insurance and that they had heard him tell others the same. Graves admitted in his testimony that he "might have" said the same. While appellee, Teddy, and Graves agree that Graves never told any of his employees that he did not have workers'-compensation insurance after he obtained it in February 2013, they also all agree that Graves never told them that he had obtained the same. Appellee and Teddy testified to hearing only a rumor from another crew that Graves had workers'-compensation insurance. More importantly, Graves testified that he worked out of his vehicle and that he never posted a notice that he had obtained workers'-compensation insurance. Appellee testified to learning that appellant had workers'-compensation insurance "near the end of 2014" and Dixie stated in its motion to join Graves as a party that it had learned of Graves's workers'-compensation insurance policy during discovery for appellee's civil matter against it.
In Rider v. Julian Martin, Inc. , this court cited McGehee Hatchery v. Gunter , in which our supreme court "pointed out that the posting of the notices was for the benefit of the employee and the purpose was to inform the employee that he was covered by workers' compensation"; it "refused to allow the employer to benefit from its failure to post the required notices."[19] In Rider , noting the appellant's testimony that he never saw the required notice on the employer's premises, this court held that it thought it "incumbent on the appellees to offer evidence to show that the required notice had been posted as required by Arkansas law."[20]
Graves argues that "[a]ppellee clearly cannot claim that any alleged statements from Mr. Graves regarding the absence of workers'-compensation insurance served as the basis for his decision not to file a workers'-compensation claim against him because he did not file a claim when he found out Mr. Graves had a policy." Whether a statute of limitations has expired is a question of fact for the Commission to resolve.[21] It is clear that Graves had actual notice of appellee's injury on the date of the injury. It is also clear that Graves failed to post notice that he had obtained workers'-compensation insurance and did not notify appellee of the same after appellee's injury. It was incumbent on Graves to notify his employees that they were covered by workers'-compensation insurance and he, by his own testimony, failed to do so. To hold that the statute of limitations had run would allow Graves to benefit from his own failure. Furthermore, the facts are clear that Graves told his employees, based on his own testimony, as well as that of appellee and Teddy, that they were the employees of the person who paid them, the person who wrote their checks; that person was never Graves. The Commission's decision will not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the *456 same facts.[22] This court cannot find that fair-minded persons could not have reached the same conclusion as the Commission. We hold that the Commission did not err.
IV. Statute of Limitations
Graves's second argument on appeal is that the Commission erred in finding that he is estopped from asserting the statute-of-limitations defense because appellee had actual notice of the existence of a workers'-compensation policy. Again, we disagree.
There are four necessary elements of equitable estoppel: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his or her conduct be acted on or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the latter must be ignorant of the true facts; and (4) must rely on the former's conduct to his or her injury.[23] Graves knew that (1) appellee had been seriously injured on the job, he had told appellee that he did not have workers'-compensation insurance, he had told appellee that he was an employee of the person who paid him, which was never Graves, and he never informed appellee that he had workers'-compensation insurance once he obtained it; (2) fair-minded people could agree that Graves intended for appellee to believe that he was employed by another person and that he did not have workers' compensation insurance, even after he obtained it, and the findings of the Commission seem to support this; (3) appellee believed that another entity was his employer and that Graves was uninsured; and (4) appellee sued the other entity to recover his damages because of his belief, which was formed based on Graves's representations.
The entirety of Graves's argument is an exercise in asking this court to give greater weight to certain testimony than the Commission obviously did. The Commission determines credibility and weighs the evidence.[24] Accordingly, we hold that the Commission did not err.
Affirmed.
Harrison and Klappenbach, JJ., agree.

Dawson owns Dixie.

Cottonwood Partnership and CEM Partnership were also named parties in the complaint; however, they are not a party to this appeal.

The record is not clear how the matter ended up in front of the Commission; however, we address the merits because the Commission has exclusive jurisdiction in this matter. See Pineda v. Manpower Int'l, Inc. , 2017 Ark. App. 350, at 6, 523 S.W.3d 384, 389 (citing Johnson v. Bonds Fertilizer, Inc. , 375 Ark. 224, 227, 289 S.W.3d 431, 433 (2008) ("[the] Commission has exclusive jurisdiction to decide whether an employee-employer relationship exists.")); Hickey v. Gardisser , 2010 Ark. App. 464, at 4, 375 S.W.3d 733, 735 (citing VanWagoner v. Beverly Enters. , 334 Ark. 12, 970 S.W.2d 810 (1998)) ("[T]he Commission has exclusive, original jurisdiction to determine the facts that establish subject-matter jurisdiction.").

Dixie's prehearing questionnaire lists only itself and StoneTrust, its workers'-compensation insurance carrier, as "respondent"; Dawson is not listed.

After this court's remand for supplementation of the record and supplementation of the addendum, appellant's counsel responded to the clerk of the Commission by email on November 30, 2015, advising that he called the ALJ and orally moved that Graves be joined as a party to the matter.

Whom "they" refers to is not identified.

Graves never clarified who "we" referred to, but it is sufficient to note that he is apparently included in the "we" referenced.

Terry Hopper, a non-crew brother of appellee, also testified, but his testimony is irrelevant to the points on appeal.

This included an exception of two days on which he returned to "gainful employment" with Graves.

Dixie did not appeal the Commission's opinion and therefore is not a party to this appeal.

La-Z-Boy Mfg., Inc. v. Bruner , 2016 Ark. App. 117, at 5, 484 S.W.3d 700, 703 (citing Get Rid of It Ark. v. Graham , 2016 Ark. App. 88, 2016 WL 537389 ).

Id. (citing Pina v. Wal-Mart Stores, Inc. , 91 Ark. App. 77, 83, 208 S.W.3d 236, 239 (2005) ).

Id.

Id.

Cottage Cafe, Inc. v. Collette , 94 Ark. App. 72, 73-74, 226 S.W.3d 27, 28-29 (2006) (citing Strickland v. Primex Techs. , 82 Ark. App. 570, 120 S.W.3d 166 (2003) ).

Id.

As a subargument to this point, Graves argues that the Commission erred in finding that appellee filed a claim against Graves. The ALJ's opinion states, "The claimant relied on the conduct of [Graves], and indeed filed his initial worker's compensation claim against [Dixie.]" No statement, and therefore no finding, was made that appellee filed a claim against Graves.

Ark. Code Ann. § 11-9-407(a) & (b) (Repl. 2012).

31 Ark. App. 144, 146, 789 S.W.2d 743, 744 (1990) (citing Gunter , 237 Ark. 448, 373 S.W.2d 401 (1963) ).

Id.

Reynolds Metal Co. v. Circuit Court of Clark Cty. , 2013 Ark. 287, at 5, 428 S.W.3d 506, 509 (citing Houston Contracting Co. v. Young , 267 Ark. 322, 590 S.W.2d 653 (1979) ).

Michael v. Keep & Teach, Inc. , 87 Ark. App. 48, 50, 185 S.W.3d 158, 160 (2004) (citing Superior Indus. v. Thomaston , 72 Ark. App. 7, 32 S.W.3d 52 (2000) ).

Smith v. Aluminum Co. of Am. , 78 Ark. App. 15, 18, 76 S.W.3d 909, 912 (2002) (citing Miller Cty. v. Opportunities, Inc. , 334 Ark. 88, 96, 971 S.W.2d 781, 786 (1998) ).

Godwin v. Garland Cty. Landfill , 2016 Ark. App. 498, at 4, 504 S.W.3d 660, 662 (citing Martin Charcoal, Inc. v. Britt , 102 Ark. App. 252, 284 S.W.3d 91 (2008) ).